THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ELDEN DANIELS, Plaintiff in Error.

*Opinion filed April 24, 1925.*

1. CRIMINAL LAW—*when a verdict cannot be set aside on evidence—alibi.* In a prosecution for rape, where there is evidence sufficient to establish the commission of the crime by the defendant but the determination of the defendant's guilt depends upon the credibility of the witnesses testifying on one side or the other on the question of an alibi, the verdict finding the defendant guilty cannot be set aside as not sustained by the evidence.

2. SAME—*when giving instruction as to time of commission of crime will not reverse.* An instruction that the crime need not be proved to have been committed on the particular day named in the indictment if it is shown to have been committed on some date within three years previous to the day on which the indictment was

found should not be given in a prosecution for rape where the defendant sets up the defense of an alibi, but where there is no dispute as to the day on which the crime was committed such instruction will not require a reversal of a judgment of conviction.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

HAROLD J. BANDY, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JESSE R. BROWN, State's Attorney, MERRILL F. WEHMHOFF, and I. H. STREEPER, for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

This writ of error was sued out to review the judgment of the circuit court of Madison county by which the defendant was convicted of the crime of rape. The victim of the crime, who was a married woman about twenty-three years old living with her husband and their two children, was the only witness who testified to the facts constituting the crime. Her testimony established the commission of the crime, and the only question in the case is the identity of the defendant, who was a young man twenty-two years old, whom she had known previously. She identified him fully, and if her testimony was believed the verdict finding the defendant guilty was justified by the evidence.

The defense was an alibi. The crime occurred on the night of May 15, 1923, in the village of Madison, at about eight o'clock. The defendant testified that he lived with his wife, mother and father and in the month of May, 1923, was working for the American Refrigerator Transit Company in St. Louis, doing painting and stenciling. On May 15 he worked stenciling cars and quit work about 4:30, leaving the plant with Wilbur Endicott, the foreman. They went to the soft drink parlor and restaurant at 2401 South Second street kept by Frank Pigot and remained there until after seven o'clock. They then went to

317—6

the soft drink parlor and restaurant of Endicott's cousin, at 3900 North Broadway. They got there about eight o'clock and did not stay long. The defendant caught a car at the Broadway station of the McKinley car line, got off at Fifth and G streets in Madison, and went straight home. His mother and father were there when he arrived, which was ten minutes to nine. He did not see the complaining witness and was not in a place where she was that evening.

The defendant's mother testified that she lived in Madison, at 2013 Beckwith avenue; that she remembered Elden's arrest, which occurred at her home about six o'clock when he came from work on May 16; that he got home the evening before at ten minutes after nine. It was on the 15th. She did not see him that evening, as she was in bed. He arrived home at ten minutes after nine and she had just got in bed.

Wilbur Endicott testified that he worked for the American Refrigerator Transit Company and on May 15, 1923, quit work at 4:30. The defendant and Endicott stopped at Frank Pigot's place, at Second and Barton streets, and stayed there until fifteen minutes after seven and then went to 3900 North Broadway. It took three-quarters of an hour to ride there and it was right close to eight o'clock when they got there. They got some sandwiches, drank a little soda and stuff, were there five or ten minutes, and then went to Ninth and Salisbury streets. Endicott went to get the Bellefontaine car and the defendant waited for the McKinley car.

Frank Pigot testified that he lived and ran a soft drink parlor at 2401 South Second street, in St. Louis, knew the defendant and saw him in Pigot's place at about 4:30 on May 15, 1923. He could not say just exactly how long the defendant was there, because he was busy. It was something around seven o'clock.

Emma Bolin testified for the State in rebuttal, that she lived on Seventh street in Madison and on the evening

of May 15, 1923, saw the defendant at her door at about
7:20. On cross-examination she testified that she talked to
the defendant that evening; that she was not friendly with
him. She said: "I didn't help stir up this case. They say
my daughter is married to him. I don't know it to be a
fact. She lives with him and his parents. I haven't made
any threats against him."

Irene Bolin also testified for the State in rebuttal, that
she lived in Madison and knew the defendant by his going
with her sister, and on May 15 he was at her house between
seven and eight o'clock and asked about a letter to her sis-
ter. On cross-examination she said she was sure it was
on that evening because she recognized his voice; that she
remembered because her mother came up on Tuesday even-
ing, and Tuesday was May 15; that she had an ill-feeling
toward the defendant; that he was married to her sister
and she didn't like him. On re-direct examination she was
asked the question, "Why don't you like him?" and an-
swered: "Because he insulted me." This was objected to
by the defendant but no ruling was made by the court. She
was then asked in what way did he insult her, and an ob-
jection to that question was sustained.

According to the defendant's testimony he was in
St. Louis until eight o'clock and arrived at his home in
Madison at ten minutes to nine. He was corroborated by
Endicott as to his being in St. Louis at eight o'clock and
by his mother as to his time of arriving at home. Pigot
corroborates the testimony of Endicott and the defendant
as to being at his place until about seven o'clock. On the
other hand, Mrs. Bolin and her daughter testified that he
was at their house on Seventh street, in Madison, which
was in the neighborhood of the scene of the crime, at 7:20.
One was his mother-in-law and the other his sister-in-law
and they were unfriendly to him. The prosecuting witness
identified him positively as her assailant. It was for the
jury to determine the credibility of the witnesses. It is

impossible to say from this record that the defendant and his witnesses were so clearly entitled to be believed as against the witnesses for the prosecution as to make it manifest that there is a reasonable doubt of the defendant's guilt. In such condition of the proof the verdict cannot be set aside on the ground that it is not sustained by the evidence.

The question asked of Irene Bolin why she did not like the defendant was not objected to until after she had answered, "Because he insulted me." There was no ruling by the court and no motion made to exclude the answer. An objection was sustained to the next question asked, "In what way did he insult you?" There was no ruling of the court of which the defendant can complain.

The court gave the following instruction to the jury:

"It is not necessary that the particular day in the indictment specified above be proved, but it is sufficient if it is proved that the crime charged was committed on some date within three years previous to the day on which the indictment was found."

It is admitted by the plaintiff in error that this instruction is correct as an abstract proposition of law, but it is argued that it is not applicable to the case, and that the giving of it constituted such error as should cause a reversal of the judgment because the effect of it was to destroy the defense of alibi. There was no question in regard to the time when the crime was committed. The instruction was unnecessary and because unnecessary ought not to have been given, but it is impossible that it could have been prejudicial to the defendant. All the evidence on both sides referred to the evening of May 15, 1923. The instruction could not have led the jury to infer that the crime might have been committed on any other date.

The judgment will be affirmed.          *Judgment affirmed.*