Filed 6/27/08          NO. 4-07-0563

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,  )  Appeal from
        Plaintiff-Appellee,           )  Circuit Court of
        v.                            )  McLean County
RONALD W. THRASHER,                   )  No. 06CF266
        Defendant-Appellant.          )
                                      )  Honorable
                                      )  Kevin P. Fitzgerald,
                                      )  Judge Presiding.
_____

        JUSTICE MYERSCOUGH delivered the opinion of the court:

        On July 21, 2006, a jury found defendant, Ronald W.

Thrasher, guilty of unlawful possession of a firearm by a con-

victed felon (720 ILCS 5/24-1.1(a) (West 2006)).  In September

2006, the trial court sentenced defendant to 11 years' imprison-

ment.  Defendant appeals, arguing that the trial court (1)

committed reversible error when it instructed the jury that the

State did not need to prove that the charged offense occurred on

the date specified in the information; and (2) abused its discre-

tion in fashioning an 11-year sentence.  We affirm.

I. BACKGROUND

        On March 10, 2006, the State charged defendant with

unlawful possession of a firearm by a convicted felon.  The

information stated in pertinent part:

        "[O]n or about [the] []9th day of March[]

        2006[,] at Bloomington, *** [defendant] com-

mitted the offense of unlawful possession of a firearm by a convicted felon in that he, or one for whose conduct he was legally responsible, knowingly and while on mandatory supervised release, possessed a handgun on or about his person after having previously [been convicted of a felony]."

The information did not name the specific location where the alleged offense occurred other than simply, "at Bloomington." However, this case came to the State's attention following a dispute in the parking lot outside Winner's Lounge in Bloomington, Illinois, during the late-night hours of March 8, and the early-morning hours of March 9, 2006 (hereinafter the Lounge incident). On this night, defendant was at the Lounge with several friends: Jennifer Bains Talamantez (defendant's girlfriend at the time), Erron Gilmer, and two other women who were friends of Talamantez.

The State later filed an indictment charging defendant in the same terms as the information, which was later amended by interlineation.

In opening argument, the State laid out its theory of the case. The State would attempt to prove that, on the night of the Lounge incident, Gilmer got into a dispute at the Lounge. Bouncers at the Lounge asked defendant's group to leave. Defen-

dant and Gilmer then went back to defendant's apartment to retrieve defendant's gun, while the women waited in the car. The group then drove back to a gas station near the Lounge. Defendant kept his gun on his person until defendant and Gilmer exited the car at the gas station near the Lounge. Defendant then gave the gun to Gilmer, who performed the shooting.

The State believed Talamantez would testify that when defendant and Gilmer returned from defendant's apartment, Talamantez saw defendant's gun tucked in defendant's waistband, the same gun she had seen in defendant's apartment on previous occasions. The State believed that defendant's neighbor, Heather Jenkins, would testify that she too had seen defendant keep a gun in his apartment, a gun which matched the physical description of the gun used in the Lounge incident.

At trial, Talamantez testified to the circumstances under which the Lounge incident arose. Apparently, two women who were part of another group at the Lounge approached Gilmer and accused him of sexually assaulting one of their friends. In response, Gilmer turned to Talamantez and said, "[I]f something happen[s,] do you have my back?" Talamantez told Gilmer that she would support him. A man then approached Gilmer and challenged him regarding the alleged sexual assault. Gilmer punched the man, and a fight ensued. Defendant tried to break up the fight. Defendant's group then left the bar, but other customers followed

the group and began to throw bottles at Talamantez's car. Defendant's group got in the car and drove away.

According to Talamantez, defendant then turned to Gilmer and asked him what he wanted to do. Gilmer responded in an upset and angry manner, "You know what I want to do." The group went to defendant's apartment. Defendant and Gilmer went inside defendant's apartment while Talamantez and the other two women waited outside. When defendant and Gilmer returned to the car, they told Talamantez to drive back to the Lounge. Contrary to what the State indicated Talamantez's testimony would be, Talamantez testified that she did not see either man with a gun. Talamantez dropped defendant and Gilmer off at Huck's gas station near the Lounge. Defendant gave Talamantez his cell phone so that they could maintain contact and directed her to drive the other two women home and then come back to Huck's. When Talamantez returned to Huck's, she saw police cars in the Lounge parking lot. She quickly learned that a man shot a gun during a dispute. Gilmer was the likely shooter.

During cross-examination, Talamantez admitted that she had previously told police that she saw that defendant had a gun in his waistband when she dropped him off at Huck's. Also during cross-examination, Talamantez admitted discussing the shooting at the scene with witnesses from the Lounge, whom she told that she had cleaned defendant's gun in the past. However, Talamantez

- 4 -

claimed that both her two videotaped and audiotaped statements to police and her statements to witnesses at the scene regarding her knowledge that defendant owned the gun that had been used in the shooting had been lies. She claimed the police pressured her into making her statements on the videotape. She had no explanation for her statements about the gun to witnesses at the scene. The two audiotaped statements were admitted into evidenced and shown to the jury.

The State later called defendant's neighbor, Heather Jenkins, to corroborate Talamantez's initial version of events. Jenkins testified that she had been in defendant's apartment on several occasions during February and March 2006. On one of those occasions, Jenkins saw defendant with a gun while defendant was sitting on his couch. Defendant was not touching the gun; the gun was merely next to defendant on the couch. Jenkins was able to describe the gun, noting that it was black with a brown handle. However, Jenkins did not provide, nor did the State ask her to provide, the exact date that she saw defendant with the gun.

Defendant testified on his own behalf, disputing the State's theory that he retrieved the gun from his apartment before giving it to Gilmer and returning to the Lounge. According to defendant, Gilmer went into the apartment to gather some personal belongings because Gilmer had decided against spending

the night as originally planned. Defendant took some cocaine, which he planned to sell at Huck's in a drug deal he had just recently arranged. Talamantez dropped off defendant and Gilmore at Huck's for the drug deal. Once at Huck's, Gilmer seemed as though he still wanted revenge against the man at the Lounge and began walking toward the Lounge. Defendant followed after him. Defendant saw Gilmer pull a gun out of his waistband. At that point, defendant threw his hands up in the air and said, "What are you going to do, shoot somebody?" Defendant did not want to be involved in a shooting, so he turned around and began walking back to Huck's. As he was walking back to Huck's, he heard two gunshots. Defendant then called Talamantez on her cell phone and asked her to come and pick him up.

Defendant testified that he did not know Gilmer had a gun until Gilmer pulled it out of his waistband on the way back to the Lounge. During the investigation, defendant told police he did not own a gun. Defendant testified that the gun Talamantez told the police she had seen did not belong to him. Likewise, defendant testified that the gun Jenkins had seen earlier in his apartment did not belong to him.

In closing, the State argued:

"[In] the early morning hours of March 9, 2006[,] a firearm was used in a shooting at Winner's Lounge here in Bloomington, McLe-

- 6 -

an County.  At the time that that weapon was used there was an individual that fired that weapon by the name of Erron Gilmer.

But how did that weapon get into Mr. Gilmer's hands?  I submit to you, ladies and gentleman, when you look at the other evidence that was presented in this case, and that is the evidence of Jennifer Bains [Talamantez] and also Heather Jenkins, we know, we can now see how that weapon got into the possession of Mr. Gilmer and it was given to him by this individual, by the defendant, Ron Thrasher.

Heather Jenkins had no connection with this case around the incident that happened on March 9th.  She was called in here, ladies and gentleman, because quite frankly she corroborated some of the statements that were given [to police investigators] by Jennifer Bains [Talamantez].  Heather was a neighbor of the defendant and had been over to his residence in the past and seen, while at his residence, *** a black handgun with a brown handle.  She saw it in his possession.  She

saw it on the couch stuck down in the cushion.  That evidence was brought to you \*\*\* [as] corroboration of [the police] statement by Jennifer Bains [Talamantez]."

During jury deliberations, the jury sent the trial judge a note:

"The jury would like to clarify a point--is it necessary for us to determine proof of possession on the actual date March 8, 9--or can we consider whether there is proof of possession/ownership at any point in time?"

The State proposed that the trial court give Illinois Pattern Jury Instruction, Criminal, No. 3.01 (4th ed. 2000) (Hereinafter IPI Criminal 4th) to the jury, which states:

"3.01 Date of Offense Charged.

The [(indictment) (information) (complaint)] states that the offense charged was committed [(on or about)] [date].  If you find the offense charged was committed, the State is not required to prove that it was committed on the particular date charged."

Over the objection of defense counsel, the trial court provided the jury with the following instruction, in the form of IPI Criminal 4th No. 3.01:

- 8 -

"The indictment states that the offense
charged was committed on or about March 9,
2006.  If you find the offense charged was
committed, the State is not required to prove
that it was committed on the particular date
charged."

The jury found defendant guilty of possession of a
firearm by a convicted felon, and the court sentenced defendant,
a Class X felon, as stated.  This appeal followed.

## II. ANALYSIS

### A. The Trial Court Properly Gave
### IPI Criminal 4th No. 3.01

Generally, the State is "not required to prove that a
crime was committed on a particular date, unless the allegation
of a particular time is an essential ingredient of the offense or
a statute[-]of[-]limitations question is involved."  People v.
Suter, 292 Ill. App. 3d 358, 363, 685 N.E.2d 1023, 1027 (1997).
"Where the proof at trial [establishes or] suggests the offense
occurred on a date other than the one charged, IPI Criminal 3d
No. 3.01 serves to inform the jury that the difference in dates
is not material."  Suter, 292 Ill. App. 3d at 363, 685 N.E.2d at
1027.  Giving IPI Criminal 4th No. 3.01 prevents a defendant from
arguing that he should be acquitted simply because of a nonfatal
variance between the charging information and the proof at trial.
Suter, 292 Ill. App. 3d at 363, 685 N.E.2d at 1027.  However,

- 9 -

giving IPI Criminal 4th No. 3.01 may result in reversible error where (1) "inconsistencies between the date charged in the indictment and the evidence presented at trial are so great that the defendant is misled in presenting his defense"; or (2) the defendant "presents an alibi for the time alleged in the indictment and is thereby prejudiced because he failed to gather evidence and witnesses for the time actually proved by the State." Suter, 292 Ill. App. 3d at 364, 685 N.E.2d at 1028.

Defendant argues that the trial court erred when it responded to the jury's question by providing IPI Criminal 4th No. 3.01. Defendant asserts that the inconsistency between the March 9 date charged in the information and the evidence presented at trial through Heather Jenkins' testimony that defendant possessed a gun at some point in February or March 2006 misled defendant in presenting his defense. Defendant states that he was charged with "a specific incident of possession of a weapon, based on the incident that occurred at Winner's Lounge in the early hours of March 9, 2006." Defendant essentially argues that while the State did not need to prove that the possession incident at the Lounge happened on March 9, 2006, it did need to prove that the possession incident at the Lounge happened, because that was the possession incident that defendant had prepared to defend against based on the information as charged. Defendant contends that he was not prepared to defend against

evidence that, at "some undisclosed time" in February or March 2006, Jenkins saw him in possession of a gun in his apartment.

We disagree. In the instant case, the State's evidence did not prejudice defendant or mislead him in preparing his defense. Both the information and superseding indictment alleged:

> "[O]n or about [the] []9th day of March[] 2006[,] at Bloomington, *** [defendant] committed the offense of unlawful possession of a firearm by a convicted felon in that he, or one for whose conduct he was legally responsible, knowingly and while on mandatory supervised release, possessed a handgun on or about his person after having previously [been convicted of a felony]."

Defendant was charged with possession of a weapon by a felon on or about March 9, 2006. He was not charged in the information or later indictment with possession at any specific location. Evidence was presented that he possessed a gun between January and March 2006. Defendant's girlfriend, Jennifer Bains Talamantez, testified she had seen defendant with either a 9-millimeter or 22-caliber pistol automatic handgun between January and March 2006 but that he did not possess a gun on March 9, 2006. Talamantez in an audiotaped and videotaped statement

presented to the jury told police on March 9, 2006, that she saw defendant with a gun when he got out of her car at the gas station following the fight at the bar during the late-night and early-morning hours of March 8 and 9, 2006.  Talamantez's audiotaped and videotaped statement on July 10, 2006, corroborated her March 9, 2006, statement that defendant had a black handgun with a brown handle stuck in his waistband when he got out of the car at Huck's on March 9, 2006.  At trial, Talamantez admitted making that statement but claimed police had pressured her to do so.  Talamantez also admitted defendant asked her to lie to the police about seeing the gun and not to testify against him at trial.

Heather Jenkins, defendant's neighbor, also testified to seeing defendant in possession of a handgun during visits to clean his apartment in February and March 2006.  Jenkins was unable to provide an exact date for these possessions.

Presented with Talamantez's denial about defendant's possession of the gun, her explanation for some of those implicating statements but not others and her explanation therefor, the tapes, and Jenkins's testimony, the jury had to (1) determine the witnesses' credibility, (2) determine the weight to be given to their testimony, (3) resolve conflicts in the evidence, and (4) draw reasonable inferences from the evidence.  People v. Billups, 318 Ill. App. 3d 948, 954, 742 N.E.2d 1261, 1266-67

- 12 -

(2001).

Because of Talamantez's numerous and contradictory statements about defendant's possession of the gun, a variance existed between the date in the indictment and the evidence presented at trial as to when the offense was committed. Therefore, the giving of IPI Criminal 4th No. 3.01 was proper.

Moreover, the giving of this instruction did not mislead defendant in preparing his defense. According to defendant's testimony at trial, his defense was not that he did not possess the gun on or about March 9, 2006; his defense was he did not have a gun at all at any time. Throughout defendant's testimony, he persisted that he did not own a gun. Defendant testified he did not have a gun on March 8 or 9, 2006. When asked about the gun Jenkins saw at his apartment in February or March, he responded that he "didn't see the same gun that she saw. *** I don't own a gun." When asked about the gun Talamantez saw at his apartment between January to March, he responded it was not his gun. Therefore, defendant was not misled into preparing a defense only for March 8 and 9, 2006, because defendant actually presented a defense to counter the State's evidence of defendant's possession of a gun at any time in January, February, or March 2006.

The trial court's giving of IPI Criminal 4th No. 3.01 was proper in light of the variance between the date in the

indictment and the evidence presented at trial. Contrary to defendant's assertion on appeal, this instruction did not prejudice or mislead him in preparing his defense, as he defended against all the State's evidence of his possession of a gun in January, February, and March 2006.

The State's theory of the case was that defendant had possessed the 9 millimeter in question for some months before the bar fight and provided it to the codefendant, who used it at the bar fight. The State pursued its case on a direct-liability theory as well as an accountability theory in the information, the later indictment, and the jury instructions: "the defendant, or one for whose conduct he is legally responsible, knowingly possessed a firearm." At the jury-instruction conference, the State argued accountability.

"[ASSISTANT STATE'S ATTORNEY]: It is a possession, your Honor, with--under accountability. Don't have to go to the shooting aspect of it. Mr. Gilmer possessed a gun at Winner's, but he possessed it at Winner's because this defendant gave it to him."

Sufficient evidence of defendant's aiding and abetting codefendant Gilmer was shown. That Talamantez, defendant's girlfriend, drove them from the bar to the apartment and back again is undisputed. That defendant went with Gilmer to the scene of the

shooting is also undisputed.

But defendant's attorney objected to the accountability instruction on the ground that no evidence supported accountability, and the trial court erroneously sustained that objection, in essence implying defendant had to have given codefendant Gilmer the gun that night. "THE COURT: And if so then the defendant had to have possessed it and it's direct." Defendant simply did not have to possess the gun that night, because that is not how defendant was charged. Regardless, the jury had some question on this issue. The jury had the jury instructions, no doubt discussing the elements of the crime. The jury addressed Talamantez's credibility and her explanation for her first inculpation of defendant and asked the logical questions: does it matter when defendant possessed the gun? The answer: no, it did not matter. Clearly, codefendant possessed the gun on March 9, 2006. Direct evidence, Talamantez's tape, established defendant provided it on that date. Talamantez explained her statement as "pressured," but circumstantial evidence or testimony established defendant gave it to codefendant Gilmer that night or shortly before, merely by his prior possessions in recent days. The evidence was sufficient here to convict defendant of possession of a gun on either a direct or accountability possession. Simply because defense counsel led the court and jury astray is not reason to reverse. Defense counsel's theory was to confuse this

issue.

> "[Codefendant] Erron acted on his own inside the first time; acted on his own on the return.  Grown man.  He is responsible for himself.
>
> [Defendant] acted on his own.  Grown man.  He is responsible for himself.
>
> The People have not proven to you beyond a reasonable doubt that [defendant] possessed any firearm.  They are asking you to guess or to fit in these pieces of this puzzle and the proposition that I believe, or the theory, the supposition, the inference he is asking you to draw from the testimony you heard, don't believe it is supported by the infer-ence, excuse me[,] by the evidence or by reasonable inference from the evidence."

Finally, the burden-of-proof jury instruction contains no date of the possession or location of the possession.  Clearly, the State did not have the burden of proving the exact date of the offense, and the trial court correctly gave IPI Criminal 4th No. 3.01.

### B. The Trial Court's Sentence of 11 Years' Imprisonment Was Not an Abuse of Discretion

Defendant argues his remorse, rehabilitative potential,

- 16 -

and the lack of violence in his background support a finding the trial court abused its discretion by sentencing defendant to 11 years' imprisonment.

A trial court is given great deference when making sentencing decisions, and if a sentence falls within the statutory limits, it will not be disturbed on review unless the trial court abused its discretion and the sentence was manifestly disproportionate to the nature of the case. People v. Grace, 365 Ill. App. 3d 508, 512, 849 N.E.2d 1090, 1093-94 (2006). "A defendant's character, prior criminal history, mental capacity, background, age, and future dangerousness are just a few of the factors a trier of fact may consider in fixing the appropriate punishment." People v. Thompson, 222 Ill. 2d 1, 35, 853 N.E.2d 378, 398 (2006).

Defendant was convicted of a Class 2 felony, but due to his criminal history, he was sentenced as a Class X offender. The sentencing range for Class X offenders is 6 to 30 years. 730 ILCS 5/5-8-1(a)(3) (West 2006).

According to the presentence investigation report, this was defendant's ninth felony conviction. Previous convictions were for burglary, residential burglary, possession of controlled substance with intent to deliver, possession of a controlled substance, obstructing justice, driving under the influence, and retail theft. Further, as the State noted at sentencing, this

was defendant's second conviction for illegal possession of a weapon by a felon, and defendant was on mandatory supervised release (MSR) when he committed the instant offense. Defendant's presentence investigation report also chronicles defendant's repeated failure to comply with probation and MSR terms and conditions.

As defendant stated, he did express his remorse to the trial court during sentencing. The court found his remarks to be sincere but noted the test of his sincerity will be when he is released from prison.

> "The system has tried over and over again to impress upon you that if you commit crimes and do things that are dangerous or against the law[,] that there will be harsh consequences[,] and it hasn't seemed to get through. And I can sit here today and believe with all my heart everything that you have written in this letter to me and still have significant doubt based on your actions, not your words, whether any of this is going to mean anything when you get out [of prison] again because it takes, it takes having a firm conviction, a mission in life."

Despite defendant's remorse and possible rehabilita-

tion, the trial court found defendant's criminal history warranted an 11-year sentence. This sentence was on the low end of the 6- to 30-year range defendant faced for a Class X sentence, and it did not result in an abuse of discretion.

### III. CONCLUSION

Therefore, we affirm the trial court. As a part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

McCULLOUGH, J., concurs.

COOK, J., dissents.

JUDGE COOK, dissenting:

I respectfully dissent and would reverse and remand.

The State's consistent theory in this case was that defendant transferred the gun to Gilmer on the night of the Lounge incident. The State's evidence at trial centered on that incident. In fact, the State conceded during its closing argument that "Heather Jenkins had no connection with this case around the incident that happened on March 9th." The jury, on its own, came up with the theory that defendant could be convicted based on a prior, uneventful possession in the apartment. The State's suggestion that the trial court answer the jury's question in this case with IPI Criminal 4th No. 3.01 adopts a completely different approach taken after the close of evidence. It appears the jury convicted defendant based on the uneventful possession in the apartment at some indefinite time before the shooting, and then the court sentenced defendant based on the violent circumstances surrounding providing Gilmer with a firearm to be used in a bar fight.

The State is not required to prove that a crime was committed on a particular date. In this case, it makes no difference whether the crime was committed during the late evening hours of March 8 or the early morning hours of March 9. However, giving IPI Criminal 4th No. 3.01 may result in reversible error "where [the] inconsistencies between the date charged

in the indictment and the evidence presented at trial are so great that the defendant is misled in presenting his defense." Suter, 292 Ill. App. 3d at 364, 685 N.E.2d at 1028. If defendant had known he would have to defend against something other than the Lounge incident, perhaps he could have brought in witnesses to establish that the firearm in the apartment in January or February was not his. Other than his on-the-spot denial that the gun was not his, defendant was unable to prepare a defense against the accusation of possession of a gun in the weeks and months prior to the Lounge incident.

"Due process requires that an indictment or information apprise defendant of the precise offense charged with sufficient specificity to enable him to prepare his defense and allow the pleading of the judgment as a bar to future prosecution of the same conduct." People v. Rhoden, 253 Ill. App. 3d 805, 810, 625 N.E.2d 940, 944 (1993). If defendant had been acquitted of possession of a weapon at the Lounge on March 8 or 9, could he have been later charged with possession at some other time and place? It seems clear that he could have been. Defendant's rights were violated in this case when the trial court allowed the jury to ignore the charge which had been filed.