THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM RAYMOND DARRAH *et al.*, Defendants-Appellants.

(No. 72-199;

Second District—April 30, 1974.

Albert M. Sheppard and Sam Adam, both of Chicago, for appellants.

William V. Hopf, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

A bench trial resulted in defendants being found guilty of burglary, possession of burglary tools and theft under $150. On appeal it is contended that the court erred in denying a motion to suppress evidence and that the evidence failed to prove the defendants guilty.

At the hearing on the motion to suppress, one Drew (a tenant of a four-flat apartment building) testified that at approximately 9 P.M., on March 23, 1971, he drove into the parking lot at the rear of his residence. As he stepped from his car, he heard the back door of the building slam, looked up and, from a distance of approximately 60 feet, saw two men exiting. The doorway and parking lot were both lighted. According to Drew's description, the men were both about 6 feet tall and 25 to 30 years of age; one had his hands in the slash pockets of his gold/yellow windbreaker; the other had dark hair. Standing near his car, the tenant watched the two men walk toward their car (described as a 1969 or 1970 Oldsmobile Toronado with black top and silver/gray bottom), which was backed into a parking space of the residents' lot of a nearby building. They pulled out of the lot, drove a distance of 300 to 400 feet without headlights, signalled right, then turned on their lights and proceeded down the road. Drew entered the building and, upon looking into the laundry room, noticed that the coin boxes were missing from the coin-operated washer and dryer. He went to his apartment and called the police to report the coin boxes stolen; he gave a description of the two men and the vehicle he had observed. (It was stipulated that at 9:16 P.M. the call and information was received at police headquarters.) Drew was not asked to identify the defendants at the hearing.

It was stipulated that Officer Smith and another officer received the information and description which Drew reported to the police. By

radio, Smith, who was on routine patrol, was advised that the reported vehicle had been sighted headed in his direction. He subsequently sighted a vehicle (which he described as a black-over-gray or black-over-silver, two-door Toronado, an approximate 1968 model) and pursued it. The driver of the vehicle responded immediately to Smith's signal and, at 9:25 P.M., the car was stopped at a location 7/10 of a mile from the scene of the alleged burglary. Immediately upon stopping, the driver left his vehicle, hurried back to the squad car and asked the officer if he was speeding. Without responding to the question, Smith requested the driver to return to his car. The request complied with, Smith approached the vehicle and asked the driver for his license. The license produced bore the name William R. Darrah. (In court, however, Smith identified Palmer as the one whom he referred to as the driver of the vehicle and as the person who handed him the license.) In answer to Smith's question, the driver stated that they were coming from a pancake house down the road. While standing on the passenger's side of the vehicle, Smith noticed a number of coins (found to be quarters and dimes) on the floor of that side of the car and saw part of a sock extending from beneath the passenger's seat. He asked the passenger (whom he identified as Darrah) to step from the car. Smith pulled the sock from under the seat, found it was adult-sized and filled with quarters and dimes. A further search disclosed a Colt tear-gas pen gun, a pocket knife, two additional socks which contained silver coins, a canvas bag marked U.S. Mint—Denver, two plastic trays for counting and rolling coins and a quantity of coin wrappers for dimes and quarters.

A search of the car interior conducted approximately 15 minutes later at the police station additionally revealed a Phillips screwdriver, another sock containing coins, a lock cylinder, a pocket knife, a Colt tear-gas cartridge and another Colt tear-gas pen. Defendant Palmer was found to be carrying three keys suitable for opening the type of lock commonly used on coin-operated washers and dryers.

Three days later, a search, conducted with the benefit of a warrant, revealed 3 small files, 3 screw drivers, 1 pair of long-nosed pliers, 1 ⅜" and 1 ½" drive socket, 10 quarters and 1 dime. Defendants did not give consent to any of the searches.

Forty-one-year-old Darrah testified that he was the owner of the 1968 Toronado (black over Nordic blue), that he had been driving when they were stopped by Smith, that he did not remember what Palmer was wearing at that time nor what he himself was wearing but that he neither wore nor owned a yellow or gold jacket or sweater. Palmer testified that he was a passenger of the vehicle and that he did not recall what he was wearing on that evening.

Based upon the foregoing, the trial court denied the motion to suppress evidence.

When the case came on for trial, the parties stipulated that, except for the testimony of the defendants, the evidence taken at the hearing on the motion to suppress would stand as evidence in the trial. It was further stipulated that one Warden owned the building, the washer and dryer; that coins were missing from the appliances; that the coins found in defendant's auto had a value of more than $1 but less than $150; that Drew, after calling the police, telephoned the landlord and returned to the laundry room where he noticed the coin boxes had been replaced.

■■■ Defendants attack the order denying their motion to suppress on the basis that no probable cause existed for their arrest. A peace officer may arrest without a warrant if he has reasonable grounds to believe the person arrested has committed a crime. (Ill. Rev. Stat. 1969, ch. 38, par. 107—2(c).) The belief may be founded upon hearsay evidence. (*People v. Brooks*, 13 Ill.App.3d 1003, 1006 (1973), *appeal denied.*) Here, Smith stopped the aforementioned vehicle within 7/10 of a mile from the scene of a crime, 9 minutes after the crime was reported. He knew at that time that coin boxes had been stolen, that two men (as previously described) were reported to be involved and that they were driving an Oldsmobile Toronado (also previously described). The car and its occupants generally fit the descriptions. These circumstances were supplemented by the fact that Smith, from outside the car, observed coins in plain view on the floor of the vehicle. In our opinion, the totality of the facts known to Smith at the time gave him sufficient probable cause to arrest the defendants. *People v. Belousek*, 110 Ill.App.2d 442, 449 (1969), *cert. denied*, 397 U.S. 1038, 25 L.Ed.2d 648, 90 S.Ct. 1356.

■■ The remainder of defendants' argument on this issue pertains to the subsequent search and seizure of articles found in the vehicle both at the scene of the arrest and 15 minutes later at police headquarters. The argument is premised upon a claimed invalid arrest. Having found the arrest to be valid, we additionally find that the two searches were also valid. *People v. Canaday*, 49 Ill.2d 416, 420-22 (1971).

Defendants contend that the State failed to prove them guilty of the offenses charged in that: (1) the defendants were not identified as the persons seen at the rear of the building; (2) there was no evidence to show that property in their possession at the time of arrest was actually stolen property; (3) there was no evidence that the alleged burglary tools found in defendants' possession were intended to be used to commit an offense; and (4) evidence failed to ascertain that the building owner had not given permission or consent to the entry.

■■ Defendants are correct in stating that, at trial, they were not

identified as the persons whom Drew saw at the scene of the crime. They also correctly point out that the law requires the State to prove beyond a reasonable doubt the identity of the accused as the one who committed the crime charged. (*People v. Dante*, 35 Ill.2d 538, 540 (1966).) It is well settled, however, that the identity of the accused may be established by circumstantial evidence. (*People v. Canaday*, 49 Ill. 2d 416, 430 (1971); *People v. Johnson*, 88 Ill.App.2d 265 (1967), *appeal denied; People v. Belousek*, 110 Ill.App.2d 442 (1969).) In the instant case, the radioed descriptions, the time and place at which defendants were apprehended and the product of the searches, provided substantial circumstantial evidence. Defendants stress that they were found only 7/10 of a mile from the scene of the burglary as late as 25 minutes after Drew saw the two men leave the premises and 9 minutes after the report was received at police headquarters. This, they assert, is inconsistent with the concept of guilty men fleeing from the scene. The situation can be explained, however, by the fact that shortly after Drew reported the coin boxes missing, he discovered that they had been put back into the machines.

■■ As to there being no evidence to show that the coins in defendants' possession were in fact stolen, the law does not require that, in a burglary prosecution, there be a precise identification of the property taken when the character of that property makes such exact identification difficult. *People v. Sellers*, 30 Ill.2d 221, 224 (1964); *People v. Tolefree*, 9 Ill.App.3d 475, 480 (1972); *People v. Griffin*, 48 Ill.App.2d 148 (1964).

There is no merit to defendants' claim that there was no evidence to show that any property in their possession was intended to be used to commit a theft. Palmer's possession of keys for the locks of coin-operated washers and dryers, and proximity to the scene of the just-committed burglary of such appliances, was sufficient to prove specific intent. See, *People v. Johnson*, 88 Ill.App.2d 265, 280, 283-284.

■■ We also find untenable defendants' argument that there was no evidence to show that the owner of the building had not given permission or consent to the entry of his building. The elements of unauthorized entry and intent may be proven by inference from the facts. (*People v. Patterson*, 1 Ill.App.3d 724 (1971).) Here, the owner of the building (and the washer and dryer therein) stipulated that coins were missing from the machines and it can therefore be inferred that he had not given defendants permission to enter the building for the purpose of committing a theft.

For the foregoing reasons, we affirm the judgment of the trial court.

Judgment affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.