2019 IL App (3d) 170417

Opinion filed August 5, 2019

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Peoria County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-17-0417 |
| | ) | Circuit No. 15-CF-726 |
| JOHNNIE LEE SIMS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | The Honorable |
| | | John P. Vespa |
| | | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice Wright dissented.

**OPINION**

¶ 1        Defendant was charged with and found guilty of unlawful possession of a weapon by a felon and sentenced to seven years in prison. Defendant argues that (1) the trial court erred in admitting other-crimes evidence, consisting of testimony that he possessed a different weapon prior to being charged with the crime at issue, (2) the trial court erred in instructing the jury that it could find defendant guilty, (3) the prosecutor's closing remarks deprived him of a fair trial, and (4) "cumulative errors" resulted in an unfair trial. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3          On November 10, 2015, defendant Johnnie Lee Sims was charged with unlawful possession of a weapon by a felon. 720 ILCS 5/24-1.1(a) (West 2014). The indictment alleged that defendant possessed a handgun on or about October 26, 2015, and had previously been convicted of the offense of unlawful possession of a controlled substance.

¶ 4          Prior to trial, the State filed a "Notice of Intent to Use Other Crimes," seeking to "introduce testimony and evidence of the Defendant's conduct with regard to other firearms as proof of intent, knowledge, design and for other lawful purpose in this case." Defendant filed a motion *in limine*, seeking to exclude all evidence and testimony of "other alleged crimes" committed by him, claiming that such evidence would be "substantially more prejudicial than probative." The trial court denied defendant's motion *in limine*.

¶ 5          At trial, Nathan Adams, a police officer with the Peoria Police Department testified that he was dispatched to Shenita Brown's home at approximately 11 p.m. on October 26, 2015, "for a civil matter between Johnnie Sims and Shenita Brown." Defendant and Brown were arguing because defendant thought Brown hid the keys to his vehicle. After searching for about 15 minutes, Adams found the keys in Brown's bedroom. According to Adams, defendant was "yelling" and "very angry." He kept calling 9-1-1 even after Adams arrived. As a result, several police officers responded to the scene.

¶ 6          After Adams found defendant's car keys, defendant began moving boxes of his belongings from Brown's home to his vehicle. He continued to do so for approximately 30 minutes. Brown and defendant continued arguing, and Brown eventually told Adams to look under the seats of defendant's car for a gun. Defendant responded by saying that if there was a gun in the car, Brown put it there. Adams searched defendant's vehicle and found a .380-caliber

handgun in the center console. Defendant said the gun belonged to his son who had gone to the shooting range earlier in the day and left the gun in the car.

¶ 7    The parties stipulated that neither the gun nor a magazine found in defendant's vehicle provided prints with sufficient detail to be compared to defendant's fingerprints. The parties also stipulated that defendant had "previously been convicted of a felony."

¶ 8    The State called Shenita Brown to testify next, but before she testified, the judge read the following statement to the jury twice:

> "Evidence will be received about the defendant's conduct involving firearms other than the one for which he is charged in this case. This evidence will be received on the issue of defendant's intent, knowledge, lack of mistake, lack of accident, and may be considered by you only for that limited purpose."

Defendant objected to Brown's testimony.

¶ 9    Brown testified that she was defendant's ex-girlfriend and lived with him for approximately two years. During the time they were together, defendant spent most evenings at her house. About a month prior to October 26, 2015, defendant accused her son, Shaquille, of stealing a gun from his car. Defendant told Brown his stepson, Tylen, would get him another gun because "[h]e wouldn't be caught out here with these n***" without a gun. The gun defendant accused Shaquille of stealing was different than the one police found in defendant's vehicle on October 26, 2015.

¶ 10    Brown testified that defendant called the police on October 26, 2015, because he thought Brown was hiding his car keys. When police arrived, defendant was "irate" and "started hollerin' at the officer." Defendant continued to call the police until 10 to 12 officers arrived. Brown and defendant continued bickering, and Brown told the officer standing next to her to check under

the seats of defendant's car "and see if there's a gun up under there." Police found a gun in defendant's car. Brown testified that defendant was the only person who drove the car that day.

¶ 11 Brown and defendant reconciled after October 26, 2015, and spoke about defendant's criminal charge. Defendant told Brown that he told his stepson, Tylen, to say he was driving the car on October 26, 2015, and had left his gun in it.

¶ 12 Matt Trimble, a police officer for the city of Peoria, testified that he responded to a call on October 2, 2015. Defendant reported that he was missing $300 in cash, about $100 worth of compact disks, and a .45-caliber handgun from his vehicle. Defendant believed his girlfriend's son, Shaquille, stole the items. Brenda Chepanoske, an information technician at the Peoria Police Department, testified that defendant came into the department on October 4, 2015, and provided the serial number of the gun taken from his vehicle. Defendant stated that the owner of the gun was Tylen Wright.

¶ 13 Tylen Wright testified that he bought a .45-caliber gun and stored it in his bedroom. Wright testified at trial that defendant took the gun from his closet and put it in defendant's car. Defendant reported the gun stolen after someone broke into his vehicle.

¶ 14 Wright further testified that he bought a .380-caliber gun on October 15, 2015. A couple days before October 26, 2015, Wright intended to go to the shooting range with the gun but never made it. He placed the gun under the driver's seat of defendant's car. Wright testified that he told defendant that the gun was in the car. After defendant was arrested, defendant told Wright to tell police that he left the gun in the center console.

¶ 15 Wright testified that defendant was married to his mother, Crystal Sims, but admitted that defendant was frequently not home at night. Sims, however, testified that defendant spent the

night at her house the "majority of the time." She testified that defendant had access to Wright's room.

¶ 16    Defendant testified that, on the night of October 26, 2015, he drove his vehicle to McDonald's to purchase food for Brown. After he returned to Brown's house with the food, he and Brown began arguing, and his car keys became misplaced. Defendant called the police because he thought Brown was hiding his keys. Defendant continued calling the police, and a total of five officers arrived on the scene. Adams, one of the officers, found his keys.

¶ 17    Defendant asked the officers to remain at Brown's house until he retrieved his belongings. After making a few trips from the house to his car, defendant heard Brown tell Adams that there was a gun under the seat in his vehicle. Defendant responded, "[I]f there's a gun, she must have put it there." An officer looked inside defendant's vehicle and pulled a gun out of the console. Defendant told the officer, "[T]hat's my son's gun." Defendant explained that he recognized the gun because Wright showed it to him after he bought it. Defendant denied ever using the gun.

¶ 18    Defendant testified that, in October 2015, he was "in between places" because he and Crystal "were havin' some issues." He said he helped at Crystal's house but was not residing there. He testified he lived at several locations at that time. He considered Brown's home a "satellite location." Defendant described his relationship with Brown as "off and on." He denied knowing that the .380-caliber gun was in his vehicle on October 26, 2015. He also denied advising Wright or Brown about what to tell authorities about the gun.

¶ 19    Defendant testified that in the summer of 2015, he woke up to find the trunk and doors of his vehicle opened. He did not immediately know that Wright's .45-caliber gun was stolen, but he thought it might have been because Wright drove the vehicle the day before and "he has an

issue with forgettin' things." After talking to Wright, defendant reported the .45-caliber gun stolen.

¶ 20		In closing arguments, the prosecutor stated: "[T]he only issue is whether or not the defendant knowingly possessed the firearm on October 26, 2015. That would be the .380 Taurus handgun that you heard so much about." The prosecutor further stated:

"Back to the 26th. When they get there and the police arrive, they're describing the defendant as just being out of control and irate. He's so mad. He's hollering. He's calling 911. He's calling more police regardless of a status as a felon or not. Is that the kind of person who we want walking the streets with a handgun?

Gun violence is rampant in this community. It's a serious problem. It's a serious problem when felons have guns. It's not *** a victimless crime. It's an offense against society. Because there is so much violence revolving around guns, we do our best to take them off the street one gun at a time.

So, I would ask, I would submit to you that the evidence has proved beyond a reasonable doubt that Johnnie Sims knew that .380 was in the car when he was driving it ***. That he exercised control over it certainly to the extent that he moved it from underneath the front seat to the center console. That was his gun, and I would ask you to find beyond a reasonable doubt that he possessed that gun on October 26, 2015."

Defendant did not object to any of these statements.

¶ 21        At the jury instruction conference, the State asked the court to provide to the jury Illinois Pattern Jury Instructions, Criminal, No. 3.01 (4th ed. 2000) (hereinafter IPI Criminal 4th), which stated:

> "The indictment states that the offense charged was committed on or about October 26, 2015. If you find the offense charged was committed, the State is not required to prove that it was committed on the particular date charged."

Defendant objected to the instruction. The trial court overruled the objection and allowed the instruction to be given to the jury. The court also gave the jury IPI Criminal 4th No. 3.14, which stated:

> "Evidence has been received that the defendant has been involved in conduct other than that charged in the indictment.
>
> This evidence has been received on the issue of the defendant's intent, knowledge, lack of mistake, and lack of accident, and may be considered by you only for that limited purpose.
>
> It is for you to determine whether the defendant was involved in that conduct and, if so, what weight should be given to this evidence on the issue of intent, knowledge, lack of mistake, and lack of accident."

The jury was also instructed as follows: "Any evidence that was received for a limited purpose should not be considered by you for any other purpose."

¶ 22        The jury found defendant guilty of unlawful possession of a firearm by a felon. Defendant filed a motion for judgment notwithstanding the verdict or for a new trial. The trial court denied the motion and sentenced defendant to seven years in prison. Defendant filed a motion to reconsider sentence, which the trial court denied.

¶ 23                                    II. ANALYSIS

¶ 24                              A. Other-Crimes Evidence

¶ 25        Defendant first argues that the trial court erred in allowing "other-crimes evidence," specifically testimony about him possessing the .45-caliber handgun prior to October 26, 2015. He argues that testimony was not relevant and was substantially more prejudicial than probative.

¶ 26        To sustain a conviction for unlawful possession of a weapon by a felon when the defendant is not found physically possessing the weapon, the State must prove that the defendant (1) had knowledge of the presence of the firearm and (2) exercised immediate and exclusive control over the area where the firearm was found. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Knowledge may be shown by evidence of the defendant's acts, declarations, or conduct from which it can be inferred that he knew the weapon existed in the place where it was found. *Id.* Knowledge is ordinarily established by circumstance evidence, rather than direct proof. *People v. Weiss*, 263 Ill. App. 3d 725, 731 (1994).

¶ 27        Under the applicable rules of evidence, evidence may not be admitted unless it is relevant. *People v. Ward*, 2011 IL 108690, ¶ 77 (citing Ill. R. Evid. 402 (eff. Jan. 1, 2011)). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Even if evidence is relevant, it will be excluded if its admission would violate another rule of evidence. *Ward*, 2011 IL 108690, ¶ 77; Ill. R. Evid. 402 (eff. Jan. 1, 2011).

¶ 28        "The term 'other-crimes evidence' encompasses misconduct or criminal acts that occurred either before or after the allegedly criminal conduct for which the defendant is standing trial." *People v. Spyres*, 359 Ill. App. 3d 1108, 1112 (2005). It can include crimes or acts of

misconduct for which the defendant was not charged or convicted. *People v. Arze*, 2016 IL App (1st) 131959, ¶ 101. Other-crimes evidence is admissible if it is relevant for any purpose other than to show the defendant's propensity to commit crimes. *People v. Wilson*, 214 Ill. 2d 127, 135 (2005). Other-crimes evidence may be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Even if other-crimes evidence is admissible for a proper purpose, the trial court may exclude the evidence if its prejudicial effect substantially outweighs its probative value. *People v. Pikes*, 2013 IL 115171, ¶ 11; Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 29 The determination of whether the prejudicial effect of evidence substantially outweighs its probative value rests within the sound discretion of the trial court. *People v. Hale*, 2012 IL App (1st) 103537, ¶ 24. Similarly, a trial court's decision to admit other-crimes evidence will not be reversed on appeal unless the court abuses its discretion. *People v. Donoho*, 204 Ill. 2d 159, 182 (2003). A trial court abuses its discretion if its determination was arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *People v. Foreman*, 2019 IL App (3d) 160334, ¶ 30. Reversal is not appropriate under the abuse of discretion standard where reasonable minds can disagree about whether certain evidence is admissible. *Id.*

¶ 30 The improper introduction of other-crimes evidence is harmless error when a defendant is neither prejudiced nor denied a fair trial because of its admission. *People v. Nieves*, 193 Ill. 2d 513, 530 (2000). An error in admitting other-crimes evidence is harmless if there is substantial evidence of the defendant's guilt. See *id.* at 530-31; *People v. McLaurin*, 2015 IL App (1st) 131362, ¶ 54.

¶ 31 When other-crimes evidence is admitted, an instruction about the limited purpose of the evidence is appropriate. See *People v. Vincent*, 92 Ill. App. 3d 446, 458 (1980). Such an instruction substantially reduces any prejudicial effect created by the admission of the evidence. *People v. Illgen*, 145 Ill. 2d 353, 375-76 (1991); *Foreman*, 2019 IL App (3d) 160334, ¶ 35.

¶ 32 Here, the trial court admitted the testimony of Brown and Wright regarding defendant's prior possession of another gun, Wright's .45-caliber gun that was stolen from defendant's vehicle in early October 2015. Admission of this testimony was not an abuse of discretion for several reasons. First, the other-crimes testimony was relevant. Defendant was charged with unlawful possession of a weapon by a felon. Because defendant was not found in physical possession of the weapon, the State had to prove beyond a reasonable doubt that defendant had knowledge of the presence of the firearm in his vehicle. See *Spencer*, 2012 IL App (1st) 102094, ¶ 17. In this case, defendant denied knowing that the .380-caliber weapon was in his vehicle. Testimony that defendant had a different weapon in his vehicle prior to the date in question and regularly kept a weapon in his vehicle was relevant to prove that defendant knew that a weapon was in his vehicle on October 26, 2015.

¶ 33 Furthermore, the trial court did not abuse its discretion in finding that the probative value of the other-crimes evidence was not substantially outweighed by its prejudicial effect. The trial court substantially reduced the prejudicial effect of the other-crimes evidence by instructing the jury that this evidence could be considered only for the "limited purpose" of "the defendant's intent, knowledge, lack of mistake, and lack of accident" and not for any other purpose. The trial court gave the jury that instruction three times: twice immediately before Brown's testimony and once at the end of trial. Further minimizing the prejudice of the other-crimes evidence was this limiting instruction provided to the jury at the end of the trial: "Any evidence that was received

- 10 -

for a limited purpose should not be considered by you for any other purpose." Because the jury was told many times the limitation of the other-crimes evidence, it is unlikely that the jury considered it for an improper purpose. See *People v. Green*, 2017 IL App (1st) 152513, ¶ 98 (jurors are presumed to follow court's instructions). Under these circumstances, the trial court did not abuse its discretion in admitting the other-crimes evidence.

¶ 34                                    B. Jury Instruction

¶ 35        Next, defendant argues that the trial court erred in allowing the State to issue IPI Criminal 4th No. 3.01. He contends that the instruction allowed the jury to convict him of possessing a different weapon, the .45-caliber gun, on a date prior to the one set forth in the indictment.

¶ 36        The instruction provided to the jury stated as follows:

> "The indictment states that the offense charged was committed on or about
> October 26, 2015. If you find the offense charged was committed, the State is not
> required to prove that it was committed on the particular date charged."

See IPI Criminal 4th No. 3.01. Defendant objected to the instruction, but the trial court overruled the objection and provided the instruction to the jury.

¶ 37        The decision about whether to give a jury instruction is within the sound discretion of the trial court. *People v. Anderson*, 2012 IL App (1st) 103288, ¶ 33. A reviewing court will reverse a trial court's decision on a jury instruction only for an abuse of discretion. *Id.* An abuse of discretion will be found where no reasonable person could agree with the position of the lower court. *Id.*

¶ 38        Because the State is generally not required to prove that a crime was committed on a particular date, issuing IPI Criminal 4th No. 3.01 is usually appropriate. See *People v. Suter*, 292 Ill. App. 3d 358, 363 (1997). When proof at trial suggests the offense occurred on a date other

than the one charged, IPI Criminal 4th No. 3.01 serves to inform the jury that the difference in dates is not material. *Suter*, 292 Ill. App. 3d at 363. The instruction prevents a defendant from arguing that he should be acquitted simply because of a technical, nonfatal variance between the proof at trial and the charging instrument. *Id.* When a witness testifies that a crime occurred at 11 p.m., or after, it is appropriate for the court to issue IPI Criminal 4th No. 3.01 because the crime might actually have occurred after midnight, which would be a different date than the one alleged in the indictment. See *People v. Whitaker*, 263 Ill. App. 3d 92, 100 (1994).

¶ 39     However, IPI Criminal 4th No. 3.01 is not appropriate in all cases. See *Suter*, 292 Ill. App. 3d at 364. The committee note for the instruction states: "This instruction should be given only when there is a variance between the date alleged and the evidence ***." IPI Criminal 4th No. 3.01, Committee Note. Where there is no variance between the proof and the charging instrument, there is no need for the instruction. *Suter*, 292 Ill. App. 3d at 363.

¶ 40     Use of the jury instruction results in reversible error where inconsistencies between the date charged in the indictment and evidence presented at trial are so great that the defendant is misled in presenting a defense. *People v. Thrasher*, 383 Ill. App. 3d 363, 368 (2008). If a defendant denies committing the crime with which he is charged on any date, the instruction does not prejudice or mislead him in preparing his defense. *Id.* at 370; see also *People v. Stevens*, 2018 IL App (4th) 160138, ¶ 35 (defendant was not prejudiced by trial court giving IPI Criminal 4th No. 3.01 because defendant claimed "regardless of the date, he did not do it").

¶ 41     The trial court did not abuse its discretion by providing IPI Criminal 4th No. 3.01 to the jury. The evidence at trial established that police found the .380-caliber gun in defendant's vehicle sometime after 11 p.m. on October 26, 2015. Because it was possible that police actually

found the weapon the following day, IPI Criminal 4th No. 3.01 was properly given. See *Whitaker*, 263 Ill. App. 3d at 100.

¶ 42    Furthermore, the instruction did not mislead defendant in preparing and presenting a defense. Defendant denied possessing a firearm on both October 26, 2015, and earlier that month when he discovered that a different firearm was stolen from his vehicle. Defendant testified that he did not knowingly possess either weapon because both were left in his vehicle by Wright, unbeknownst to him. Because defendant denied ever knowingly possessing a firearm, he was not misled in preparing and presenting his defense. See *Thrasher*, 383 Ill. App. 3d at 370; *Stevens*, 2018 IL App (4th) 160138, ¶ 35.

¶ 43    Finally, the State's closing argument made clear to jurors that they were to decide whether defendant possessed the .380-caliber gun on October 26, 2015. The prosecutor stated:

> So, I would ask, I would submit to you that the evidence has proved beyond a reasonable doubt that Johnnie Sims knew that .380 was in the car when he was driving it ***. That he exercised control over it certainly to the extent that he moved it from underneath the front seat to the center console. That was his gun, and I would ask you to find beyond a reasonable doubt that he possessed that gun on October 26, 2015."

The jury was well informed that they had to determine if defendant possessed the .380-caliber gun on October 26, 2015, not another gun on a different date. The trial court did not abuse its discretion in issuing IPI Criminal 4th No. 3.01.

¶ 44                                    C. Closing Arguments

¶ 45        Next, defendant argues that comments made by the prosecutor during closing arguments deprived him of a fair trial. Specifically, he contends that the prosecutor improperly "characterized [him] as a bad person" and "appealed to societal interests."

¶ 46        In general, prosecutors have wide latitude in the content of their closing arguments. *People v. Evans*, 209 Ill. 2d 194, 225 (2004). The prosecutor may remark on the evidence and on any fair and reasonable inference the evidence may yield, even if the suggested inference reflects negatively on the defendant. *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005). When supported by the evidence, a prosecutor may comment unfavorably on the defendant and his crime. *People v. Jackson*, 84 Ill. 2d 350, 360 (1981).

¶ 47        Reviewing courts will not focus on selected phrases or remarks in isolation but, rather, consider the closing argument as a whole. *Evans*, 209 Ill. 2d at 225. A pattern of intentional prosecutorial misconduct may so seriously undermine the integrity of judicial proceedings as to support reversal under the plain error doctrine. *People v. Johnson*, 208 Ill. 2d 53, 64 (2003). However, a single misstatement does not deprive a defendant of a fair trial unless it results in substantial prejudice to the defendant and constitutes a material factor in his conviction. *People v. Phagan*, 2019 IL App (1st) 153031, ¶ 56.

¶ 48        "The State's attorney, in closing argument, is permitted to dwell upon the results of a crime and to comment upon its effect upon the community." *People v. Johnson*, 73 Ill. App. 3d 431, 435 (1979). A prosecutor may also comment unfavorably on the evil effects of the crime committed. *Nicholas*, 218 Ill. 2d at 121-22. However, "[t]he broader problems of crime in society should not be the focus of a jury considering the guilt or innocence of an individual defendant." *Johnson*, 208 Ill. 2d at 77-78.

¶ 49       Even if a prosecutor's remarks are improper and constitute error, the trial court may correct them through proper jury instructions. *Green*, 2017 IL App (1st) 152513, ¶ 98. Any possible prejudice caused by improper closing remarks is greatly diminished when the trial court instructs the jury that closing arguments are not evidence. *Id.* Jurors are presumed to follow the instructions provided by the trial court. *Id.*

¶ 50       Here, we find no error in the prosecutor's statements. First, the prosecutor's question to the jury about whether defendant was the kind of person "we want walking the streets with a handgun" was within the bounds of proper argument. See *People v. Rodriguez*, 89 Ill. App. 3d 941, 946 (1980). The prosecutor's description of defendant immediately preceding that question was supported by the evidence. Brown and Adams described defendant on the night of the incident as "very angry," "irate," yelling, and acting irrationally by repeatedly calling 9-1-1 even though officers were already on the scene. Because the prosecutor's description of defendant was supported by the evidence, it was not improper even though it presented defendant in a negative light. See *Jackson*, 84 Ill. 2d at 360.

¶ 51       Further, the prosecutor's comments about gun violence were not improper. Unlike the prosecutor in *Johnson*, 208 Ill. 2d at 77-78, who discussed the general problem of crime in society, the prosecutor's remarks in this case were limited to the problems of gun violence and felons possessing weapons. Because defendant was charged with unlawful possession of a weapon by a felon, the prosecutor's statements were a commentary on the results of the crime with which defendant was charged and its effect on the community, which is permissible. See *Nicholas*, 218 Ill. 2d at 121-22.

¶ 52       Moreover, even if the prosecutor's comments constituted error, they did not substantially prejudice defendant. Here, the trial court instructed the jury: "Neither opening statements nor

closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded." Such an instruction greatly diminished any prejudice potentially caused by the prosecutor's comments. See *Green*, 2017 IL App (1st) 152513, ¶ 98. Because the prosecutor's comments in this case were isolated and the jury was instructed that they did not constitute evidence, the comments did not deprive defendant of a fair trial.

¶ 53                                                  D. Cumulative Errors

¶ 54          Finally, defendant argues that cumulative errors deprived him of a fair trial. He claims that the cumulative errors were (1) the court's failure to hold a pretrial conference regarding the admissibility of other-crimes evidence, (2) the court's improper admission of other-crimes evidence, (3) the court's issuance of IPI Criminal 4th No. 3.01, (4) improper questioning by the State about defendant's morality, and (5) the prosecutor's allegedly improper comments in closing argument.

¶ 55          "[W]here errors are not individually considered sufficiently egregious for an appellate court to grant the defendant a new trial, but the errors, nevertheless, create a pervasive pattern of unfair prejudice to the defendant's case, a new trial may be granted on the ground of cumulative error." *People v. Howell*, 358 Ill. App. 3d 512, 526 (2005). "However, the cumulative errors that warrant such an extreme result must themselves be extreme." *People v. Desantiago*, 365 Ill. App. 3d 855, 871 (2006). "There generally is no cumulative error where the alleged errors do not amount to reversible error on any individual issue." *Green*, 2017 IL App (1st) 152513, ¶ 118.

¶ 56          Here, we have already determined that three of the errors alleged by defendant—the admission of other-crimes evidence, the issuance of IPI Criminal 4th No. 3.01, and the prosecutor's closing argument—did not amount to error. Thus, we will consider only the two

- 16 -

alleged errors not already discussed: the trial court's failure to hold a hearing on the admission of other-crimes evidence, and the prosecutor's questions related to defendant's morality.

¶ 57 Before other-crimes evidence may be admitted at trial, the court must find that (1) it is relevant; (2) it is being admitted to show motive, opportunity, intent, preparation, plan, knowledge, identity, *modus operandi*, or the absence of mistake; and (3) its prejudicial effect does not outweigh its probative value. Ill. Rs. Evid. 402, 403, 404(b) (eff. Jan. 1, 2011). There is no requirement that a trial court hold a pretrial hearing before determining if other-crimes evidence will be admitted at trial. Here, the trial court determined that the other-crimes evidence was admissible without the need for a hearing. As explained above, the admission of that evidence was not an abuse of discretion. We, likewise, find that the trial court's failure to hold a hearing regarding the admissibility of the evidence did not amount to error.

¶ 58 We also find no merit to defendant's contention that questions asked by the prosecutor constituted an improper attack on his morality. Defendant contends that the prosecutor's questions to Wright about whether defendant lived with him and Brown were not relevant for any purpose other than to establish that he lived somewhere other than with his wife, thereby attacking defendant's character and morality. We disagree.

¶ 59 Both the prosecutor and defense counsel asked defendant about his living situation at the time of the offense. Those questions were relevant to the crime with which defendant was charged. The evidence in this case established that the registered owner of the weapon found in defendant's car was Wright, who lived with his mother, defendant's wife. Defendant's place of residence and his access to Wright's and Brown's place of residence was relevant to the issue of whether defendant knowingly possessed the weapon that was found in his vehicle. Because the

information sought by the prosecutor's questions was relevant, the prosecutor's questions did not amount to an improper attack on defendant's morality.

¶ 60    Having found that none of the errors alleged by defendant constituted reversible error, there is no cumulative error. See *Green*, 2017 IL App (1st) 152513, ¶ 118.

¶ 61                                    III. CONCLUSION

¶ 62    We affirm the judgment of the circuit court of Peoria County.

¶ 63    Affirmed.

¶ 64    JUSTICE WRIGHT, dissenting:

¶ 65    I respectfully dissent. I would find the other-crimes evidence did little to establish defendant's knowledge of the handgun and had minimal probative value that was far outweighed by the unfairly prejudicial impact of defendant's prior bad act on the trier of fact.

¶ 66    Wright testified at trial that defendant took Wright's .45-caliber handgun from Wright's closet and placed it in the vehicle on another occasion. Wright explained that his .45-caliber handgun was subsequently stolen out of the vehicle. However, Wright admitted at trial that during a previously recorded interview, Wright told investigators he had instead left the .45-caliber handgun in the car "on the way to the range."

¶ 67    In essence, the State offered the evidence of an alleged uncharged offense involving another weapon to convince the jury that defendant was more likely to know that Wright's .38-caliber handgun was similarly hidden in the same vehicle at the time of defendant's arrest. Respectfully, I conclude the connection between these two occurrences is tenuous at best. This other-crimes evidence clearly established *Wright*'s ownership of the two firearms, but did little to establish defendant's knowledge of Wright's .38-caliber handgun that was hidden in the center

console. Accordingly, the other-crimes evidence was irrelevant as it pertains to defendant's knowledge of the presence of the .38-caliber handgun in the vehicle.

¶ 68    For argument's sake, even if the other-crimes evidence was somewhat relevant, the prejudicial effect of the other-crimes evidence far outweighed its probative value, if any, for several reasons. First, the State concedes the prosecutor devoted a "significant portion" of her closing argument to the incident involving the .45-caliber handgun. Second, Wright's statements with regard to defendant's alleged prior possession of Wright's .45-caliber handgun were contradictory. Third, the alleged prior incident with the .45-caliber handgun is frankly confusing.

¶ 69    The ensuing trial within a trial blurred the line between the prior incident with the .45-caliber handgun and the charged offense involving the .38-caliber handgun. Adding to the confusion, the jury received IPI Criminal 4th No. 3.01, which read "[t]he indictment states that the offense charged was committed on or about October 26, 2015. If you find the offense charged was committed, the State is not required to prove that it was committed on the particular date charged." There is a significant risk, based on these specific facts, that this jury instruction could have empowered a reasonable juror to believe that defendant could be convicted for the prior incident, on another date, involving the same offense with a different gun, namely, the .45-caliber handgun. Based on this record, I am uncertain whether the jury found defendant guilty of possessing the .45-caliber handgun or the .38-caliber handgun as charged.

¶ 70    For these reasons, I conclude that the trial court abused its discretion by erroneously admitting irrelevant and highly prejudicial other-crimes evidence. I would reverse defendant's conviction and remand the case for a new trial.

**No. 3-17-0417**

| | |
|---|---|
| **Cite as:** | *People v. Sims*, 2019 IL App (3d) 170417 |
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 15-CF-726; the Hon. John P. Vespa, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Peter A. Carusona, and Matthew Lemke, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |