2020 IL App (1st) 180426-U

THIRD DIVISION
December 23, 2020

No. 1-18-0426

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 4755 |
| | ) | |
| MILAN KNOX, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Carl B. Boyd, |
| | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not abuse its discretion in limiting testimony regarding defendant's brother as an alternative suspect, when the proposed testimony was speculative and of limited probative value. Additionally, defendant's counsel was not ineffective for failing to call a witness, when that witness's proposed testimony would have been inadmissible.

¶ 2    Following a bench trial, defendant, Milan Knox, was found guilty of one count of unlawful communication with a witness and sentenced to two years' imprisonment. In this direct appeal from that judgment, defendant contends that the circuit court violated his constitutional right to present a complete defense by limiting certain testimony that he alleges would have shown that it

was defendant's brother, not defendant, who communicated with the witness. Defendant also contends that his defense counsel was ineffective for failing to call a witness, who defendant claims would have supported that theory.

¶ 3    The record shows that defendant was charged by indictment with one count of communicating with a witness.

¶ 4    During opening statements at defendant's trial, the State indicated that it expected the evidence to show that defendant called the victim, Jaclyn Lenting, who was a witness in a pending case against defendant. During that phone call, defendant pretended to be a representative of the State's Attorney's Office and threatened her with jail time if she should lie.

¶ 5    Defense counsel, however, stated that there would be reasonable doubt of defendant's guilt, because defendant was with a friend at the time of the phone call, and defendant's friend did not see defendant make any phone calls. Defense counsel further stated,

> "The evidence will also show that the defendant's brother Mike Knox was in town and in [defendant]'s home. Mike was protective of his brother to the extent of even willing to do unlawful things to protect him. He had access to the phone number from which the call in question came where the person identified themselves as Mike and where—when a police officer called that number and got Mike, he had access to that phone and would answer the telephone even if it wasn't his.
>
> So with those two things the first part shows [defendant] didn't do it and the second part shows that probably somebody else did. There's at least a reasonable doubt, if not proof of actual innocence, and therefore you should find [defendant] is not guilty.

¶ 6    Lenting testified that in October of 2009, she and her husband were involved in a traffic collision, when their vehicle was struck by another vehicle as it was stopped at a red light. Lenting identified defendant as the driver of the other vehicle. At the time of the accident, Lenting noticed that defendant was unable to get out of his vehicle, and that he smelled of alcohol. Lenting observed defendant while he was outside of his vehicle performing a field sobriety test with a police officer.

¶ 7    Thereafter, Lenting and her husband were involved in court proceedings related to the accident. Lenting was under subpoena for a court date that was scheduled to occur within a few days of January 2, 2014.

¶ 8    On January 2, 2014, at 6:38 p.m., Lenting received a phone call on her cell phone from "somebody claiming to be a State's Attorney for [defendant]." Lenting and the caller discussed the upcoming court case and what she was going to say. Lenting reported that the conversation began "in a professional manner," but as it continued, the caller "didn't like the way that [Lenting] was answering some of the questions." After Lenting answered the caller's questions, the caller told Lenting that she was lying, and that if she answered questions in the same way she "could get sentenced to jail time" and could "serve five years in jail." The caller cursed at Lenting, and then hung up the phone on her.

¶ 9    Lenting testified that after the phone call, she was "terrified." She told her husband about the phone call, and then immediately called the police. Lenting's caller ID indicated that the call came from a phone number ending 8133.[1]

---

[1] The record on appeal contains the full 10-digit telephone number. However, for purpose of this appeal, we will refer to the phone number by its ending four digits.

¶ 10     After contacting the police, Lenting spoke to a detective who played her a recording of the voicemail greeting from the phone number that had called her. Lenting recognized the voice, stating that the voice on the voicemail greeting sounded like the voice of the person who had called her. Lenting also identified phone records that she provided to the police department, showing that on January 2, 2014, at 6:38 p.m., she received a seven-minute incoming phone call from the phone number ending 8133.

¶ 11     Detective Tony Curtis testified that he works for the Lansing Police Department. During the course of investigating the phone call received by Lenting, Detective Curtis learned that the phone number ending 8133 was the known phone number belonging to defendant. Detective Curtis also learned that defendant had a pending DUI case, and that Lenting was a passenger in the vehicle alleged to have been struck by defendant. Detective Curtis called the phone number, and recorded the voicemail greeting for that number. Detective Curtis then played the recording of the voicemail greeting for Lenting, who told him that she recognized the voice on the recording. The voicemail greeting was entered into evidence and published in open court.

¶ 12     Detective Curtis further testified that defendant was arrested on February 18, 2014, and was transported to the Lansing Police Department. While at the police department, defendant asked for medical attention, and Detective Curtis called the Lansing Fire Paramedics. When the paramedics arrived, Detective Curtis met them in the parking lot of the facility. The paramedics asked defendant for his personal information and defendant gave them the phone number ending 8133.

¶ 13     On cross examination, Detective Curtis was asked whether he called the number and spoke to "a subject named Mike." Detective Curtis stated that he did not "get in touch with anyone" when he called the phone number. Defense counsel questioned Detective Curtis about a notation in the

4

police report. Detective Curtis testified that, based on an initial case report, a different officer, Officer Winkler, had called the phone number ending 8133 and reported that someone who identified themselves as "Mike" answered the phone. Detective Curtis testified that he did not know who "Mike" was.

¶ 14    The parties entered a stipulation that, if called to testify, Aaron Jadernak would state that he is a paramedic, and that he was working on February 18, 2014, at 11:30 a.m. Jadernak would further state that he met defendant at the Lansing Police Department, and obtained the telephone number ending 8133 for him. Following that stipulation, the State rested.

¶ 15    The defense then called Terrell Brown, who testified that defendant is his cousin and friend, and that he has known him all his life. On January 2, 2014, Brown picked up defendant, and was with him from 2 p.m. until 7:30 p.m. Defendant did not make any phone calls while with Brown, and defendant was not away from Brown for any five- or seven-minute period during that time. Brown did not see that defendant had a phone, and did not hear a phone ring or vibrate.

¶ 16    Defense counsel then began to ask Brown about defendant's family. The State objected based on relevance. Defense counsel responded that he would "like to explain Mr. Brown knows somebody who may be an alternative suspect, someone else who may have made the call." The State renewed the objection and elaborated that "it doesn't sound like there was any sort of offer of proof that he knows of anything. It would just be speculation at this point."

¶ 17    The circuit court then stated that it was inclined to sustain the State's objection, and asked, "Do you have an offer of proof before you dive into *** the relatives of [defendant]?"

¶ 18    Defense counsel replied:

>    "I would elicit from Mr. Brown that [defendant] has a brother—had—I will
>    explain—he's dead now—named Michael Knox called Mike, who was present at

5

[defendant]'s residence identified by the detective that day January 2nd, 2018, when Mr. Brown picked up [defendant]. And he will testify to Mike's (unintelligible) —and his access to telephones in the house and his willingness to pick up phones whether or not they were his phone and answer them."

¶ 19    The State renewed their objection and stated, "It sounds like there's a lot of hearsay testimony as well as to relevance and, again, to speculation." Defense counsel replied that the "relevance was clear," in that the defense could "show that there was someone named Mike who was there and who had access to the phone there at the house and had access to the phone and a propensity to use it, none of which involves hearsay, just descriptions of his behavior. Then we have an alternative explanation for the source of his phone call." The circuit court asked, "How would this witness know about the propensity to use someone's phone?" Defense counsel replied, "Perhaps he could explain it to us." The circuit court then sustained the State's objection, "for all of the above reasons, speculation, possible hearsay, and relevance."

¶ 20    Defense counsel questioned the circuit court's ruling and said "possible hearsay is not an objection. Actual hearsay is an objection. If there is a hearsay objection, let it be raised." The circuit court asked defense counsel to rephrase the question.

¶ 21    Defense counsel then asked Brown if he knew defendant's brother, Michael Knox. Brown testified that he did, that they were close, and that defendant's brother died prior to trial. Defense counsel asked Brown how he communicated with defendant's brother. The State objected, and the circuit court sustained that objection.

¶ 22    Defense counsel asked Brown what defendant's brother would call himself. The State objected, and the circuit court sustained the objection. Defense counsel responded that "it is relevant what he calls himself. The detective identified the person in the original report when he

called—the officer in the original report—as having spoken to someone named Mike who identified himself." The circuit court instructed defense counsel to ask another question.

¶ 23    In response to questioning by defense counsel, Brown testified that he saw defendant's brother at defendant's house on January 2, 2014, around 2 p.m. when he went to pick defendant up. Brown also stated that he saw defendant's brother at defendant's house when Brown dropped defendant off at home after 7:30 p.m.

¶ 24    Defense counsel asked Brown if he knew about defendant's relationship with his brother. The State objected, and the circuit court sustained the objection. Counsel then asked Brown if defendant's brother knew about defendant's DUI case. The State objected, and the circuit court sustained the objection. Defense counsel indicated to the court that he did not understand the grounds for the objection and the circuit court explained that it was sustained as to speculation. Defense counsel posited that "[p]erhaps the witness has personal knowledge. Let's find out." The Court reiterated that the objection had been sustained and instructed counsel to ask another question. Counsel asked Brown if he ever spoke "to Mike about the DUI" and the State objected on hearsay grounds. The circuit court sustained the objection. Defense counsel responded, "No, I'm not actually talking about whether—this is not offered for the truth, it's offered to show motivation." The circuit court asked counsel whose motivation it was being offered for, and defense counsel replied "Mike." The circuit court sustained the State's objection and instructed defense counsel to ask another question. Defense counsel then concluded his examination of Brown.

¶ 25    On cross-examination, Brown reiterated that he is both a cousin and friend of defendant, and testified that he did not want anything bad to happen to defendant. Brown also testified that

he knew that defendant was in trouble since 2014, but that Brown never contacted any law enforcement agency to provide them with the information to which he had testified.

¶ 26 On redirect examination, Brown testified that he would not lie to help defendant, and that if he had been asked, he would have told the truth.

¶ 27 After the conclusion of Brown's testimony, defense counsel offered Detective Curtis's report into evidence. The People objected and the court sustained the objection, finding that it was a police report and inadmissible. The defense rested.

¶ 28 In closing, the State argued that Lenting's testimony was credible, that the phone number used to make the call "c[a]me[ ] back to the defendant" in the course of Detective Curtis's investigation, and that defendant provided that phone number as his own when speaking to paramedics.

¶ 29 Defense counsel argued in closing, "We're not going to argue about whether the phone was connected to [defendant] at that address or whether the answering machine message was his." Instead, counsel pointed to Brown's testimony that defendant's brother Mike "was there at the house when he got there and when he was back," and that the police report indicated that an officer "made a phone call to someone at this number identified as [defendant]'s phone number" and reached someone who "identified himself as Mike." In light of that testimony, counsel argued that there was "at least *** a question about who made this call." Counsel noted that people "go out of their way to help their friends and family," and that Mike may "well have gone out of his way. We don't know whether he did. He's dead. We can't ask him."

¶ 30 Counsel continued:

> "It's too great a coincidence to think that someone named Mike should be
> at the other end when [defendant] had a brother named Mike who was there that

day and apparently has access to the phone and is willing and able to answer—a reasonable inference, much more reasonable than anything else here—that he did answer it and perhaps made the phone call. I don't say he did make the phone call, I just say that it raises a question in the testimony of the evidence that [defendant] didn't have a phone and didn't make the call, that his brother Mike was there at his house and the detective called, got a phone number which answered to Mike.

       ***

In view of this lack of proof or affirmative proof that [defendant] didn't make the call and that somebody else might well have made the call, you must find [defendant] not guilty.

¶ 31    Following closing arguments, the circuit court found Lenting and Detective Curtis "extremely credible," concluding "that the offense of attempting to communicate with a witness was proven and the person that made the phone call was the defendant." The court noted that the telephone number belonged to defendant, that it appeared on Lenting's caller ID and phone records, that police called the number to verify defendant's name, and that defendant gave that number to the paramedics. The circuit court remarked, "There's no other motivation or motive for anyone else to call the witness, but for [defendant] to do so and the Court believes that has been proven beyond a reasonable doubt."

¶ 32    Defense counsel then made an oral motion to reconsider because the circuit court failed to address Brown's testimony. The court responded, "Mr. Brown's testimony was not incredible. I just believe that the evidence in this case proved beyond a reasonable doubt based on the circumstances that your client made the phone call." Defense counsel indicated that he would still

file a motion in writing and the parties scheduled a future court date for post-trial motions and sentencing.

¶ 33    On February 21, 2018, defendant filed a written post-trial motion. In that motion, defendant argued, among other things, that the court erred in excluding testimony about defendant's brother Mike. Defendant alleged that Brown could have testified "based on personal knowledge that Michael answered to 'Mike,' was aware of [defendant]'s DUI case at the time of the call, was protective and solicitous of his younger brother to the point of being willing to break the law, e.g., by hiding illegal drugs, himself had a felony record (murder and criminal sexual abuse), and had access to [defendant]'s phone and would answer it."

¶ 34    On the following court date, defense counsel argued that the State's evidence "showed uncontrovertedly that the phone call which is the basis of the charge was made from [a] phone registered to [defendant]. We didn't dispute that." Defense counsel argued, however, that the defense's evidence showed "basically without impeachment that [defendant] didn't make the phone call. The witness *** Brown testified that he was with [defendant] at all relevant times and observed [defendant], and he didn't make the call. And the Court found him not incredible, dropping the double negative, credible."

¶ 35    Defense counsel also argued that the circuit court made errors in its rulings on objections and improperly excluded certain testimony at trial. Counsel argued that the court erred in "excluding important testimony about another person who had means, motive, and opportunity to make the call." Counsel admitted that the defense was "able to get in some testimony about [defendant]'s late brother Mike," and that Brown "observed him being present that day." Defense counsel stated, however that the defense "had more to develop about [defendant]'s brother ***, including his knowledge of [defendant]'s situation, his concern for [defendant] and so forth."

10

Defense counsel claimed that the circuit court "excluded almost all of that under grounds of potential hearsay, which is not actually an objection. And, therefore, that finding was in error."

¶ 36    In response, the State argued that the court made "informed, proper, and thoughtful rulings on the State's objections, allowing the defense the opportunity to proffer testimony and to argue the legal bases extensively. I would say that all those issues were flushed out during the trial." The State further noted that the court found Lenting and Detective Curtis to be "extremely credible," and Brown to be "not incredible," which delineated the court's relative assessment of the witnesses' credibility. The State also pointed out that the phone call was made from defendant's phone, that Lenting recognized defendant's voice, and that defendant had an obvious motive to make the phone call.

¶ 37    In denying defendant's motion, the circuit court found that the credibility of Lenting, Detective Curtis, and paramedic Jadernak were all "unimpeached." "Looking at the motives of all parties involved in this case," and "after hearing all the evidence and facts of the case," the Court had "no doubt in [its] mind that it was [defendant] that made the phone call to communicate with the witness."

¶ 38    After conducting a sentencing hearing, the circuit court sentenced defendant to two years' imprisonment. Defendant filed a timely notice of appeal from that judgment.

¶ 39    In this court, defendant first contends that the circuit court violated his constitutional right to present a complete defense by limiting testimony regarding defendant's brother, Mike. Defendant further contends that his defense counsel was ineffective for failing to call Officer Winkler, the officer identified in the police report as having called defendant's phone number and reached someone who identified himself as Mike. Defendant additionally argues that the

11

cumulative effect of the trial court's rulings and defense counsel's deficient performance denied him a fair trial. We will address each of defendant's arguments in turn.

¶ 40    The due process clause of the fourteenth amendment (U.S. Const., amend. XIV) and the confrontation clauses of the federal and state constitutions (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8) guarantee criminal defendants "a meaningful opportunity to present a complete defense." (Internal quotation marks omitted.) See *People v. Santos*, 211 Ill. 2d 395, 412 (2004). However, that right does not entitle a defendant to present his or her desired defense, unrebutted, in whatever fashion the defendant chooses. "The admission of evidence is within the sound discretion of a trial court, and a reviewing court will not reverse the trial court absent a showing of an abuse of that discretion." *People v. Becker*, 239 Ill. 2d 215, 234 (2010). When a defendant claims he was denied his constitutional right to present a complete defense due to improper evidentiary rulings, we review the trial court's rulings for an abuse of discretion. *People v. Burgess*, 2015 IL App (1st) 130657, ¶ 133. A court abuses its discretion only when its decision is arbitrary, fanciful, or unreasonable, or when no reasonable person would take its view. *People v. McCullough*, 2015 IL App (2d) 121364, ¶ 104.

¶ 41    Moreover, "the right to present a defense does not include the right to introduce irrelevant evidence." *In re Detention of Melcher*, 2013 IL App (1st) 123085, ¶ 44. "Relevant evidence is that which has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Id.* (quoting Ill. R. Evid. 401 (eff. Jan. 1, 2011)). "A trial court may reject offered evidence on the grounds of irrelevancy if it has little probative value due to its remoteness, uncertainty, or speculative nature." *People v. Enis*, 139 Ill. 2d 264, 282 (1990).

¶ 42   At trial, the court excluded certain testimony regarding defendant's brother on grounds of relevance, speculation, and hearsay, and in this appeal, defendant contends that he was denied the right to present a complete defense by the circuit court's evidentiary rulings. Defendant alleges that there was "no lawful basis" for the circuit court's exclusion of testimony that Brown "personally witnessed or was aware that Mike used [defendant]'s telephone, Mike knew about [defendant]'s pending DUI case, and Mike had a strong instinct to protect [defendant] even if shielding [defendant] meant breaking the law."

¶ 43   Defendant admits that the trial court did permit testimony that defendant had a brother named Mike, and that Brown saw Mike at defendant's home when Brown picked up and dropped off defendant there. Based on this evidence, combined with Brown's testimony that he did not see defendant with a phone or making any phone calls, defense counsel argued at trial that it was a reasonable inference that Mike was the one to have made the phone call to Lenting.

¶ 44   In light of the above, it cannot fairly be said that defendant was deprived of presenting the defense that his brother Mike had an opportunity to make the phone call. Instead, defendant's argument is essentially that he was not able to present all the "motive" testimony on this issue that he wished to present. Specifically, the trial court sustained objections regarding whether Brown knew about defendant's relationship with his brother, and whether defendant's brother knew about defendant's DUI case.

¶ 45   Defense counsel's offer of proof regarding the proposed testimony was that Brown would testify that Mike had "access to telephones in the house" and to Mike's "willingness to pick up phones whether or not they were his phone and answer them." When asked by the court how Brown would "know about [Mike's] propensity to use someone's phone," defense counsel replied, "Perhaps [Brown] could explain it to us." Later, after the court sustained an objection based on

speculation to a question asking whether defendant's brother knew about defendant's DUI case, defense counsel protested, "[p]erhaps the witness has personal knowledge. Let's find out."

¶ 46    We note that the evidence showed that Brown was not with Mike at the time the call was made, and accordingly, Brown could have no personal knowledge regarding whether Mike made the relevant phone call. Accordingly, any purported relevance to the defense must be based on Mike's alleged general "willingness to pick up phones whether or not they were his phone and answer them." Such testimony would have questionable relevance here, where the conduct at issue involved making, and not answering, a phone call.

¶ 47    Moreover, counsel's offer of proof and responses to objections illustrated the speculative nature of the proposed testimony. In making an offer of proof, "counsel must explicitly state what the excluded testimony would reveal and may not merely allude to what might be divulged by the testimony. [Citation.] The offer serves no purpose if it does not demonstrate, both to the trial court and to reviewing courts, the admissibility of the testimony which was foreclosed by the sustained objection." *People v. Andrews*, 146 Ill. 2d 413, 420–21 (1992). See also *People v. Stevenson*, 2014 IL App (4th) 130313, ¶ 28 ("An offer of proof is inadequate if it is a mere summary or 'offers unsupported speculation' about the evidence."). Counsel, however, made no suggestion that Brown actually had personal knowledge of Mike using someone else's phone or that Mike knew about defendant's DUI case, rather only posited that the court should let the questioning continue to "find out" how Brown would testify.

¶ 48    Given the limited probative value of the proposed testimony, as well as its speculative nature, we do not find the circuit court's evidentiary rulings on these matters to be arbitrary, fanciful, or unreasonable, or that no reasonable person would take the same view. See *Enis*, 139 Ill. 2d at 282; *McCullough*, 2015 IL App (2d) 121364, ¶ 104. Having found that the trial court

14

properly limited the testimony based on relevance and speculation, we need not consider the alternative hearsay grounds for excluding such testimony. See *People v. Davis*, 2018 IL App (1st) 152413, ¶ 37 ("The appellate court may affirm the trial court's evidentiary rulings upon any basis that is supported by the record.").

¶ 49    Defendant next contends that his counsel was ineffective for failing to call Officer Winkler to testify that he called defendant's phone number and reached someone who identified himself as "Mike."

¶ 50    Claims of ineffective assistance are governed by the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). See *People v. Albanese,* 104 Ill. 2d 504 (1984) (adopting *Strickland*). To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *Strickland,* 466 U.S. at 687. More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. Unless the defendant makes both showings, we cannot conclude that he received ineffective assistance. *People v. Munson,* 171 Ill. 2d 158, 184 (1996).

¶ 51    "The decision whether to call particular witnesses is a matter of trial strategy and thus will not ordinarily support an ineffective-assistance-of-counsel claim." *People v. Patterson,* 217 Ill. 2d 407, 442 (2005). Trial counsel's "tactical decisions may be deemed ineffective when they result in counsel's failure to present exculpatory evidence of which he is aware, including the failure to call witnesses whose testimony would support an otherwise uncorroborated defense." *People v. King,* 316 Ill. App. 3d 901, 913 (2000). However, trial counsel does not render ineffective

assistance by failing to elicit testimony that would have been inadmissible. *People v. Orange*, 168 Ill. 2d 138, 161 (1995) ("We cannot find that it was unreasonable for defense counsel not to attempt to elicit inadmissible testimony.")

¶ 52    Here, defendant contends that defense counsel should have called Officer Winkler to testify that he called defendant's phone number and that someone who identified himself as "Mike" answered the phone. Presumably, defendant is arguing that if Mike answered the phone call from Officer Winkler, it is more likely that he was also using the phone to call Lenting. Consequently, whatever limited relevance such testimony could provide must be premised on the substantive truth that the person who answered the phone was, indeed, Mike. There is no indication that Officer Winkler personally knew defendant's brother, or that he would be able to independently identify or recognize his voice. Accordingly, the proposed testimony from Officer Winkler, that someone answered his phone call and identified himself as Mike, is clearly hearsay, as it is an out of court statement offered to prove the truth of the matter asserted. Ill. R. Evid. 801(c); see also *People v. Jones*, 2012 IL App (1st) 093180, ¶ 55 ("Generally, unsworn, out-of-court statements made by a deceased witness or a witness who is beyond the court's jurisdiction are inadmissible hearsay"). Defendant has suggested no hearsay exception that would allow the introduction of Officer Winkler's proposed testimony, and we find no exception applicable. Because the proposed testimony from Officer Winkler was inadmissible, defense counsel was not ineffective for failing to elicit it. *Orange*, 168 Ill. 2d at 161; see also *People v. Williams*, 139 Ill. 2d 1, 20 (1990) (concluding that counsel is not ineffective for failing to elicit testimony that would have been inadmissible).

¶ 53    Notwithstanding the inadmissibility of Officer Winkler's testimony, we also note that the testimony defendant contends should have been presented by his counsel, was, in actuality,

presented to the trial court. Without any objection from the State, defense counsel questioned Detective Curtis about the notation in the police report, and Detective Curtis testified that it referred to another officer, Officer Winkler, who had called the phone number ending 8133 and reported that someone who identified themselves as "Mike" answered the phone. Counsel for defendant thereafter referred to this testimony in closing, arguing that it created a "reasonable inference" that Mike made the phone call to Lenting.

¶ 54    Defendant, however, contends that it is presumed that a trial court "consider[s] only competent evidence when rendering a decision," and accordingly, argues that the trial court "obviously did not consider this improper hearsay testimony as substantive evidence supporting the defense's theory of the case or counsel's reliance on it in closing argument." However, a rule of evidence not invoked by a timely objection is forfeited, and evidence admitted without objection may be given its natural probative value. *People v. Parker,* 77 Ill. App. 3d 536, 539 (1979), citing *People v. Akis,* 63 Ill. 2d 296, 299 (1976); *People v. Ramsey*, 205 Ill. 2d 287, 294 (2002) ("once hearsay is properly admitted, the trier of fact is free to give it its natural probative value."). Accordingly, where the testimony that could have been elicited through Officer Winkler was already presented to the court, we can find no prejudice to defendant by counsel's failure to call Officer Winkler. See *Strickland,* 466 U.S. at 687.

¶ 55    Finally, defendant contends that the "cumulative effect of the trial court's improper exclusion of Brown's testimony and defense counsel's failure to call Officer Winkler" denied him a fair trial. "[W]here errors are not individually considered sufficiently egregious for an appellate court to grant the defendant a new trial, but the errors, nevertheless, create a pervasive pattern of unfair prejudice to the defendant's case, a new trial may be granted on the ground of cumulative error." *People v. Green*, 2017 IL App (1st) 152513, ¶ 117. " '[T]he cumulative errors that warrant

such an extreme result must themselves be extreme.' [Citation.]" *People v. Sims*, 2019 IL App (3d) 170417, ¶ 55. There can be no cumulative error where no error occurred at all and generally, no cumulative error will be found where alleged errors do not amount to reversible error on any individual issue or where such errors did not rise to the level of plain error. *Green*, 2017 IL App (1st) 152513, ¶ 118. Here, since we have rejected defendant's claims of error, we also reject defendant's claim that the cumulative effect of those errors denied him a fair trial.

¶ 56    For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 57    Affirmed.